# Third District Court of Appeal

## State of Florida

Opinion filed June 2, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D21-0919
Lower Tribunal No. 12-8423

————————————

**Lynette Logreira,**
Appellant,

vs.

**Efrain Logreira,**
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Marcia Del Rey, Judge.

Nancy A. Hass, P.A. and Nancy A. Hass (Fort Lauderdale), for appellant.

Davis Smith & Jean, LLC, and Laura Davis Smith, and Sonja A. Jean, for appellee.

Before SCALES, MILLER, and LOBREE, JJ.

MILLER, J.

Appellant, Lynette Logreira, the former wife, appeals a supplemental post-decretal order rendered at the behest of appellee, Efrain Logreira, the former husband.[1] The trial court modified the parties' parenting plan and ordered their two minor children to participate in Family Bridges, a program purporting to remedy the effects of "Parental Alienation Syndrome" ("PAS"). Soon thereafter, the former husband unilaterally prepared and electronically submitted the supplemental order to the trial court for signature. Although the order was unsolicited, the trial court signed it without conducting a hearing or eliciting a response. On appeal, citing a lack of notice and opportunity to be heard, along with the proposition that the order grants relief beyond that envisioned by the parties in their respective pleadings, the former wife urges error. We reverse.

## BACKGROUND AND PROCEDURAL HISTORY

The procedural posture of this case is typical of many acrimonious disputes in fractured families. Nearly a decade after reaching a settlement

---

[1] The former wife sought to invoke our original jurisdiction by filing a petition for writ of certiorari, however, the order determines "the rights or obligations of a party regarding child custody or time-sharing." Fla. R. App. P. 9.130(a)(3)(C)(iii)(b). Accordingly, we treat the petition as a notice of appeal of a nonfinal order. See Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy.").

agreement providing for shared responsibility of their two minor children, the parties filed competing motions seeking modifications of the parenting plan. Relying upon various articles and a social investigation report, the former husband contended the children, both teenagers, suffered from PAS.[2] He specifically posited the children displayed unwarranted hostility as the result of indoctrination by the former wife and sought to enroll them in a therapeutic program. In the event therapeutic intervention proved unsuccessful, he alternatively sought additional timesharing and a downward modification of child support. The former wife countered by attributing the hostility to a historical incident of abuse involving the parties' oldest child, along with

---

[2] Whether PAS is indeed a diagnosable affliction has been vigorously disputed among scholars across the country. Compare Michael R. Walsh & J. Michael Bone, Parental Alienation Syndrome: An Age-Old Custody Problem, 71-JUN Fla. B.J. 93, 93-95 (1997) ("The term parental alienation syndrome (PAS), first described by Richard Gardner, is also sometimes referred to as 'brainwashing.' . . . To heal the [parent-child] relationship, the child requires quality time with the targeted parent and continued communication to serve as a reality check and in order to counterbalance the effect of ongoing alienation at home."), with Rebecca M. Thomas & James T. Richardson, Parental Alienation Syndrome 30: Years on and Still Junk Science, 54 No. 3 Judges' J. 22, 23 (2015) ("Despite having been introduced [thirty] years ago, there remains no credible scientific evidence supporting parental alienation syndrome (PAS, also called parental alienation (PA) and parental alienation disorder (PAD)). The concept has not gained general acceptance in the scientific field, and there remains no test, no data, or any experiment to support claims made concerning PAS. Because of this lack of scientific credibility, many organizations—scientific, medical, and legal—continue to reject its use and acceptance.").

instances of negligent parenting by the former husband, including a failure to participate in the children's school events, graduation, and athletic and extracurricular activities. She sought to modify the timesharing schedule to reflect that the former husband regularly declined to exercise overnight visitation and further requested an upward modification of child support, or, in the alternative, enrollment in a family-based reunification program.

The motions culminated in a nine-day bench trial, at the conclusion of which the trial court modified the parenting plan and ordered the children into Family Bridges, a family reunification program based outside of the State of Florida. We do not delve into the merits of that decision, as it is subject to a separate appeal, but, to this effect, the court ordered the parties to "both fully comply with enrolling and making certain the two minor children attend the entire Family Bridges program." It further ordered the parties to "comply with the recommendations of all mental health and after care professionals as part of" the program, and specified "[i]n the event the children in connection with the Family Bridges program are placed to live with the Father, the Mother shall have no contact direct or indirect with the minor children until . . . that portion of the Family Bridges Program successfully concludes."

Shortly after the trial court rendered ruling, counsel for the former husband forwarded the supplemental order and accompanying letter. He

4

designated the matter as an emergency. In his correspondence, he asserted the eldest child was rapidly approaching the age of majority and rendition of the order was essential to ensure enrollment in Family Bridges.

Without affording the former wife an opportunity to respond, the court executed the order. As relevant to these proceedings, the order endowed the former husband with sole decision-making authority over the children, as well as the capacity to approve all medical and therapeutic interventions, the right to conceal the location of the children, including the place of their educational institutions, and unilateral authority to travel or authorize the same on behalf of the children. The order further prohibited the former wife from any contact with the children for an indeterminate duration, specifying that such prohibition would last for a minimum of ninety days following completion of therapy and an ensuing court-authorized vacation involving the former husband and children, curtailed the parties from ever seeking testimony from or obtaining records from "professionals" engaged in the treatment of the children, and conditionally ordered law enforcement to "assist in transferring the children to Family Bridges." The order appears, in one provision, to abdicate ultimate responsibility for determining whether reestablishment of contact between the wife and children will ever occur to "Family Bridges, or the aftercare professional, or any other professional

5

designated by the court," but, in another provision, contains a caveat that "[t]he resumption, timing, and nature of contact between the children and Mother will be based on the cooperation of the children and Mother."  This appeal ensued.

## STANDARD OF REVIEW

Trial courts are afforded broad discretion in child custody matters. Miller v. Miller, 842 So. 2d 168, 169 (Fla. 1st DCA 2003) (citation omitted). However, we review a claim of deprivation of due process de novo.  Pena v. Rodriguez, 273 So. 3d 237, 240 (Fla. 3d DCA 2019) (citation omitted).

## ANALYSIS

The constitutional guarantee of due process is implicated in determinations involving timesharing and modification of a parenting plan. See Walters v. Petgrave, 248 So. 3d 1202 (Fla. 4th DCA 2018) (reversing a final judgment establishing paternity, timesharing, and child support where the mother was denied her due process rights by being precluded from presenting her case-in-chief at the final hearing).  Due process "dictates a full and fair opportunity to be heard." Cole v. Cole, 159 So. 3d 124, 125 (Fla. 3d DCA 2013).  Of particular significance is the requirement that judicial decisions be reached by a means that "preserves both the appearance and

6

reality of fairness." Verizon Bus. Network Servs., Inc. v. Dep't of Corr., 988 So. 2d 1148, 1151 (Fla. 1st DCA 2008) (citation omitted).

While we are cognizant of the considerable amount of time and effort expended by the trial court in the underlying proceedings, the supplemental order was unsolicited by the trial court and dramatically shifted the existing framework of the parties' parenting plan. Thus, the former wife was entitled to minimal due process protections prior to entry.

Further, "[i]t is well-settled that a trial court violates due process and commits reversible error when it grants a party relief that the party did not request." Booth v. Hicks, 301 So. 3d 369, 370 (Fla. 2d DCA 2020) (citing Daniels v. Sorriso Dental Studio, LLC, 164 So. 3d 778, 782 (Fla. 2d DCA 2015) (explaining that the trial court "granted relief not requested by either of the parties, thereby violating Daniels' due process rights")). Here, the former husband did not request an award of sole parental responsibility or decision-making authority in his pleadings and neither party sought to shield the location of the children, restrain the other from accessing therapeutic professionals or records relating to treatment, involve law enforcement in the conflict, or condition access upon the cooperation of the children. Because "the argument or proffer of counsel, not rendered under oath, absent a clear stipulation, does not constitute admissible evidence," the record is devoid of

7

any indication the order was a necessary corollary to program enrollment. Pena, 273 So. 3d at 240 (citing Matrix Sys., Inc. v. Odebrecht Contractors of Fla., Inc., 753 So. 2d 652 (Fla. 3d DCA 2000) ("In the absence of a clear stipulation of counsel, argument of counsel alone does not constitute evidence from which the trial court can determine the propriety, vel non, of granting injunctive relief."); State v. T.A., 528 So. 2d 974, 975 (Fla. 2d DCA 1988) ("[R]epresentations by counsel not made under oath and not subject to cross-examination, absent a stipulation, are not evidence.") (citation omitted)). Thus, on the face of the record, the disputed order impermissibly grants relief beyond that requested in the pleadings. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.